## Aurelia Wyckoff, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Opinion filed November 8, 1939.

KRAMER, CAMPBELL, COSTELLO & WEICHERT and NORMAN J. GUNDLACH, all of East St. Louis, for appellant.

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an appeal from judgment of the city court of the city of East St. Louis. The case was tried before the court without a jury and judgment was rendered for plaintiff in the sum of $147.99.

Appellee brought suit herein for monthly disability benefits claimed to be due under the terms and provi-

sions of a group life insurance policy and certificate issued thereunder by appellant company upon employees of Armour & Company.

The appellee was 34 years of age, has been married for 11 years and had no children. She was employed by Armour & Company in its St. Louis plant since February, 1934, where she was steadily engaged in tying sausage into bundles. Early in November, 1937, appellee became ill and placed herself under treatment of Dr. Bihss of East St. Louis, where she resided, and on November 10 she became sick and quit work. At the time of her first call to Dr. Bihss she was complaining of coughing, loss of weight and feeling tired in the afternoon. Dr. Bihss examined her with a stethoscope and suspected that she had crepitant rales in the right upper lobe and determined that she had minimal pulmonary tuberculosis in the right upper lobe. Dr. Bihss ordered the appellee to bed, put her on a high caloric diet and high vitamin diet, ordered her to rest and did not allow her to do any housework at all for at least three months.

The pertinent portions of the insurance contract under which appellee seeks to recover provide for specific benefits ''in the case of any Employee who furnishes due proof to the Company, that, while insured thereunder and prior to his 60th birthday, he has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit.''

''Six months after receipt of such proof, the Company shall commence to pay to such Employee or, in case of insanity, as provided in said Group Life policy, in lieu of the payment of the insurance under the said Group Life policy at his death, equal instalments depending upon the amount of insurance in force on the life of such Employee at the date of receipt of such proof or at the date of termination of the insurance,

if proof be received later, as shown in the following table:''

The contract further provides: ''Such instalment payments shall be made only during the continuance of such disability,'' and that ''in the event of the recovery of the Employee from such disability before all instalments have been paid, further payments shall cease.''

The evidence shows that appellee became sick and quit work on November 10, 1937. She stated to her doctor at that time that she was weak and lost weight, that her weight previously was 156 pounds and now was 127 pounds. She testified she ran a temperature of 99.2 and after November, 1937, was confined to bed for about three months. She further stated that she could not do the kind of work at the time of trial that she did at the time she got the insurance policy. She also stated that at times she spits blood, that the first two months, starting the 10th of November, 1937, she was in bed but since that time has been up and down. The evidence further shows that appellee's physician, Dr. Bihss, made two tuberculin tests, the last being in May, 1938, and that each of these tests showed positive. Her doctor further testified that he had treated her constantly since her visit to his office, that he had her X-rayed on March 6, 1938, and that the X-ray examination disclosed no evidence of any present pathology, and that any abnormalcy had disappeared. He again had X-rays taken in May, 1938, which disclosed no active tuberculosis. He did, however, continue to treat her with the rest cure at home; that it was his opinion that the appellee at the time of trial had tuberculosis of an arrested type. He stated, however, that she was not well enough to do her regular household duties or factory work at the time of trial, but that he was permitting her to do light housework and that she was getting better and that in all probability she would be completely cured within five or six months.

There appears to be no question from the record that sometime during her life appellee had tuberculosis, and from the testimony of her physician, Dr. Bihss, who attended her constantly and had adequate opportunity to examine her, she had minimal pulmonary tuberculosis in November, 1937, and was totally disabled for a period of approximately three months, being confined in bed under the rest cure prescribed by Dr. Bihss.

By the terms of the policy it was incumbent upon the appellee to allege and prove that she was "totally and permanently disabled." Furthermore, the policy provided that "six months after such proof, the company shall commence to pay." The certificate also provided that the monthly benefits "shall be made only during the continuance of such disability and that in the event of recovery from such disability before all instalments have been paid, further payments should cease."

From the evidence it appears, clear enough, that the appellee was totally disabled for at least three months, but the question whether she was also permanently disabled is another matter. Her own doctor on March 23, 1938, at her request, sent in a report to the defendant that the insured "was not at that time still unable to engage in work, occupation or business," and on cross-examination, that by "not wholly not able to work" he meant "she was able to do light housework." On May 31, 1938, appellee's physician reported to defendant, on her behalf, that the disease was not active at that time.

As stated above, her own doctor was in a position to observe and watch the plaintiff's progress. He stated that he considered it perfectly all right for plaintiff in her condition to do light work around the house, and that by light work he meant light housework. He further stated that there were no active tuberculosis lesions, and in view of plaintiff's progress

that in a period not to exceed five months she would be perfectly normal in all respects. The appellee's doctor's opinion as to her progress toward recovery was substantiated by the testimony of Dr. Ellis, the doctor for Armour & Company and appellant, who examined appellee in May and September, and just before trial, with stethoscope and by X-ray diagnosis which showed no evidence of tuberculosis. In view of the plaintiff's own doctor's testimony, substantiated by the testimony of Dr. Ellis and that of the various X-ray diagnoses made, we are unable to agree that the plaintiff's ailment was permanent within the meaning of the contract.

From the record it appears that the plaintiff's doctor was of the opinion that the tuberculosis was arrested and plaintiff was on the road to recovery, as indicated in his report to the defendant in March, 1938. Furthermore, it appears that in March, May and July of 1938, the plaintiff's doctor reported to the defendant that there was no evidence of tuberculosis and further reported on at least one occasion that the plaintiff was not totally disabled.

It has been held in *Buffo v. Metropolitan Life Ins. Co.*, 277 Ill. App. 366, that the policy under consideration is a total disability policy as applied to all kinds of endeavor and is not an occupational policy. We are of the opinion that the ruling in the *Buffo* case is correct and that the plaintiff's ability in this case to perform light housekeeping within the six-month "waiting period" as set forth in the insurance contract would preclude her from claiming total disability thereunder.

It is appellee's contention that *Ginsburg v. Prudential Ins. Co.*, 294 Ill. App. 324, is controlling in this case. This we cannot agree, as it appears in the *Ginsburg* case that no recovery was allowed after the insured was able to resume work even though for an hour or two each day. In the instant case the appellee

was able and was permitted by her doctor to engage in light housework during the six-month period of waiting, as provided by the contract after first proofs of claim were submitted to the defendant.

Judgment of the city court of East St. Louis is reversed.

*Reversed.*