371 P.2d 791

David W. ERWIN, Plaintiff-Appellant,

v.

UNITED BENEFIT LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 6865.

Supreme Court of New Mexico.

May 22, 1962.

Robert W. Ward, Lovington, for appellant.

Schauer & Stiff, Roswell, for appellee.

CHAVEZ, Justice.

This is an appeal by David W. Erwin, plaintiff in the court below, from a summary judgment in favor of defendant-appellee, United Benefit Life Insurance Company.

Appellant's complaint filed November 12, 1959, alleged that appellee had issued its insurance policy on November 17, 1949, insuring appellant or any dependent named in the schedule, if they became afflicted with definitely diagnosed poliomyelitis and other diseases set out in the policy. Appellant further alleged: (1) That appellant's dependent contracted poliomyelitis in August, 1950, at a time when the policy was in force with all premiums paid; (2) that prompt notice of such sickness was given to appellee in compliance with the terms of the policy, and that appellee has recognized and admitted its liability thereunder and has paid medical expenses under the policy in the amount of $2,518.36; (3) that appellant has incurred medical expenses in the sum of $654.70, and that appellee refuses to pay said medical expenses. Appellant prayed judgment for $654.70.

Appellee, by answer, admitted the issuance of the policy but denied that it recognized or admitted its liability under the policy in excess of $2,518.36. By separate defenses, appellee alleged: (a) That its liability was limited to expenses while the policy was in force and that the policy lapsed on November 1, 1954, due to nonpayment of renewal premium; (b) that the first six charges reflected by Exhibit "B" between June 11 and August 17, 1953, were paid by appellee; (c) that the first sixteen charges reflected in Exhibit "B" totaling $105 were barred for failure of appellant to furnish proof of loss as required by paragraph 7 of the policy, and that all charges reflected in Exhibit "B" incurred prior to February 18, 1957, totaling $65 were barred due to the provision in the policy which required

that the suit be brought within two years from the expiration of the time within which proof of loss be furnished as required by the policy.

Appellee then filed its motion for summary judgment, which was granted by the trial court. The parties stipulated to the following facts:

1. That appellant paid the initial premium and all renewal premiums payable under the insurance policy to and including the payment payable on November 1, 1953, but that appellant has not paid any renewal premium payable on said policy on November 1, 1954, or at any other time thereafter.

2. That the first six charges reflected on Exhibit "B" between June 11 and August 17, 1953, totaling $30 were paid by appellee by draft dated September 11, 1953.

3. That appellant did not at any time furnish appellee with affirmative proof of loss for medical expenses incurred by him as reflected by the first sixteen charges set forth on Exhibit "B" between June 11, 1953, and August 11, 1958, totaling $105, as required by the provisions of said insurance policy.

4. That no action at law or in equity was brought within two years from the expiration of the time within which proof of loss is required by the terms of said policy with respect to all charges reflected on Exhibit "B" on or prior to February 18, 1957, totaling $65.

5. That subject to the defenses raised by appellee's amended answer, appellant incurred medical expenses in the sum of $654.70 in accordance with Exhibit "B" and that appellant shall be entitled to recover the full amount of such sum, except as such recovery may be barred by the defenses raised in appellee's said amended answer.

The expenses incurred in this claim by appellant on account of the dependent's poliomyelitis were incurred after November 1, 1954, and up to and including 1959.

The pertinent provisions of the insurance policy are:

"Hereby insures the person whose name is shown in the Schedule on the last page hereof (herein called the Insured) against loss because of expense incurred by the Insured for himself or any Dependent named in said Schedule while this policy is in force resulting exclusively from any disease, specifically named in Part A of this policy, and against loss of life, limb, or sight resulting from accidental bodily injuries received while this policy is in force; and promises to pay benefits to the Insured to the extent herein provided.

"SECTION I SPECIFIED DISEASES BENEFIT PART A.

"If the Insured, or any Dependent named in the Schedule on the last page hereof, shall become afflicted with definitely diagnosed Poliomyelitis, Leukemia, Scarlet Fever, Diphtheria, Smallpox, Spinal or Cerebral Meningitis, Encephalitis, Tetanus, or Rabies (including inoculations for suspected Rabies), the cause of which originates while this policy is in force and more than fifteen days after the Policy date, the Company will pay benefits as outlined in Part B of this policy, but not to exceed an aggregate sum of Five Thousand ($5,000.00) Dollars for each person for each such disease."

Part B sets out the schedule of benefits such as doctor's bills, hospital bills, special nurse, ambulance, x ray, blood transfusions, drugs and medicines, iron lung, braces and crutches, and transportation.

"Additional Provisions" set out in the policy provide:

"(d) The Schedule, appearing on the last page of this policy and showing Policy Date, Renewal Date, Initial Premium, Renewal Premium and all other data, shall be considered a part of this contract as fully as though it preceded the execution clause hereof.

"(e) The term of this policy begins on the Policy Date at 12 o'clock noon, Standard Time of the place where the Insured then resides and ends at 12 o'clock noon, the same Standard Time, on the Renewal Date. Each renewal term ends at 12 o'clock noon, the same Standard Time, on the date the next renewal is due.

"(f) This policy is issued in consideration of the payment in advance of the Initial Premium for the initial term ending on the Renewal Date.

"(g) Prior to the expiration of the initial term, or any subsequent term for which this policy may have been renewed, the payment of the Renewal Premium is required to keep this policy in effect. The acceptance of any premium shall be optional with the Company."

Under "General Provisions" of the policy, paragraph 3 provides:

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

The parties by the pleadings and stipulation acknowledge the following facts. (a) That the policy was in force in Au-

gust, 1950, at the time appellant's dependent became afflicted with poliomyelitis; (b) that appellant did not pay the renewal premium payable under the terms of the policy on November 1, 1954, or at any time thereafter; and (c) that subject to the defenses raised by appellee's amended answer, appellant, after November 1, 1954, incurred medical expenses in the sum of $654.70 in accordance with Exhibit "B."

Appellant submits two points upon which he relies for reversal:

I. The trial court erred in holding the insurance policy was not in force by reason of the failure to pay the premium which became due after plaintiff's dependent had contracted poliomyelitis and before the $5,000.00 limit of liability had been reached.

II. If the court concludes that there is a conflict in the two provisions of the policy which cannot be harmonized, then the conflict must be resolved against the insurance company.

We will consider appellant's point II.

Appellant's contention is that when his dependent became afflicted with poliomyelitis, the event insured against, the liability of the policy became fixed until said liability was discharged, within the limits of liability of the policy. Appellee, on the other hand, argues that it agreed to pay only those expenses which were incurred while the policy was in force, and that under the terms of the policy the insured must pay the renewal premiums to keep the policy in effect. Appellee contends that appellant is barred from claiming benefits on account of medical expenses incurred after November 1, 1954, having failed to pay the renewal premium due on said date or at any time thereafter.

There is also disagreement between the parties as to the event insured against. Appellant asserts that poliomyelitis was the event insured against, whereas appellee contends that the policy insured against loss because of expenses incurred while the policy was in force resulting from certain diseases set out in the policy, including poliomyelitis.

The question before us involves the construction of the insurance policy and we must interpret it according to established principles of law.

█ It is not the province of the court to make an insurance contract for the parties or to guide them in their business affairs. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407.

The rule is clearly stated in Aronson v. Mutual Life Ins. Co. of New York, 313 Ill.App. 35, 38 N.E.2d 976, as follows:

"* * * It is held in practically all of them that an insurance contract

of this kind is construed liberally in favor of the insured, but that the court has no right to make a new contract for the parties. If there are terms of doubtful meaning or ambiguities, the doubt must be resolved in favor of the insured, but as the Supreme Court of the United States said in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 231, 76 L.Ed. 416, this canon of construction 'furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.' "

■ The clauses of an insurance policy are to be construed as constituting a contract between the parties and intended to be a complete and harmonious instrument designed to accomplish a reasonable end. In Crosby v. Vermont Accident Ins. Co., 84 Vt. 510, 80 A. 817, the court said:

"* * * In the language of the federal Supreme Court: 'By every sound rule of construction, an instrument should be interpreted by the context, so as if possible to give a sensible meaning and effect to all its provisions; and so as to avoid rendering portions of it contradictory and inoperative, by giving effect to some clauses to the exclusion of others.' Ladd v. Ladd, 8 How. 10, 12 L.Ed. 967. And in Hydeville Co. v. Eagle Railroad & Slate Co., 44 Vt. 395, it is said to be the duty of the court, if possible, to construe an agreement so as to give effect to every part, and from the parts a harmonious whole."

It is undisputed that the insurance policy was in force with all premiums paid in August, 1950, at the time appellant's dependent became afflicted with poliomyelitis; likewise, that appellant did not pay the renewal premium under the terms of the policy on November 1, 1954, or at any time thereafter.

■ In the insurance policy before us, the first clause of the policy insures the person named therein, and his dependents, against loss because of expenses incurred while the policy is in force and compels the insured to continue to pay premiums to keep the policy in force. If the first clause in the policy is given effect, to the exclusion of the provisions of Section I, Part A, it will take away the rights granted appellant under this particular provision. Due to the uncertainties in the language of the several provisions in the insurance policy we cannot construe it so as to give effect to every part and from its parts a harmonious whole. We cannot make an insurance contract for the parties. Neither can we give emphasis to

the insuring clause and to the premium renewal provisions to the exclusion of Section I, Part A, which insures the appellant's dependent should he become afflicted with poliomyelitis which originates while the policy is in force.

It is the law in this jurisdiction that an insurance policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured. Nikolich v. Slovenska Nardona Podporna Jednota, 33 N.M. 64, 260 P. 849; Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310; Aetna Ins. Co. v. Rhodes, (10 CCA), 170 F.2d 111; and Fidelity & Casualty Co. of New York v. Smith, (10 CCA), 189 F.2d 315, 25 A.L.R. 2d 1025.

Our disposition of this case under point II necessarily involves appellant's point I, or makes it unnecessary for us to consider the same.

The judgment of the district court is reversed and the case remanded with direction to set aside the summary judgment and proceed in a manner not inconsistent with the views herein expressed. IT IS SO ORDERED.

CARMODY and MOISE, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.