340 So.2d 970 (1976)
BLUE CROSS OF FLORIDA, INC., a Florida Corporation, and Blue Shield of Florida, Inc., a Florida Corporation, Appellants,
v.
William O. DYSART, Jr., As Administrator of the Estate of William O. Dysart, Deceased, Appellee.
No. 75-1583.
District Court of Appeal of Florida, Second District.
December 22, 1976.
Rehearing Denied January 12, 1977.
*971 George D. Lynn, Jr., of Harrison, Greene, Mann, Rowe & Stanton, St. Petersburg, for appellants.
Kenneth C. Deacon, Jr., Law Offices of Harris, Barrett & Dew, St. Petersburg, for appellee.
PER CURIAM.
This is an appeal from a summary judgment entered in favor of appellee/plaintiff in its action against appellants/defendants whereby plaintiff recovered reimbursement for benefits under hospitalization and medical contracts issued by defendants to plaintiff's decedent. We reverse.
As a result of injuries sustained in a motor vehicle accident on December 26, 1972, plaintiff's decedent Dysart incurred hospital and medical expenses from December 26 to December 27 and from January 3, 1973, to the date of his death, January 20, 1973. The parties stipulated that Dysart's readmission to the hospital on January 3 was for injuries and complications resulting from the accident.
At the time of the accident the decedent was employed by Pasadena Community Church in St. Petersburg, and was a subscriber under group medical and surgical *972 and hospitalization policies issued by appellants. The contract year as defined by the policies expired on December 31, 1972. The policies were cancelled by the decedent's employer and replaced as of midnight December 31, 1972, with a health and accident insurance policy issued by Fireman's Fund America. Fireman's Fund America specifically excluded expenses incurred in connection with illness or injury sustained prior to the effective date of its policy.
Defendant refused to pay the medical and hospital expenses incurred by plaintiff subsequent to January 1, 1973. This action followed. Both parties moved for summary judgment, and the court entered summary judgment in favor of the plaintiff for hospitalization coverage, medical benefits, attorney's fees, interest and costs, concluding that:
"... while this contract expired on December 31, 1972, which date was subsequent to Plaintiff's covered illness, but prior to his rehospitalization on January 4, 1973, (which hospitalization `was caused by the accident and was the cause of injuries which possibly initiated the chain of events responsible for his death' and further that `the injuries received in the December 26 accident were in all likelihood the proximate cause of his hospitalization in January.'), the coverage in effect in December continued over and binding upon the insurance company in January."
The issue here is whether the Blue Cross Hospital Service contract and the Blue Shield Medical & Surgical contract afford coverage to a subscriber for expenses incurred after termination of those policies where the cause for such hospitalization and medical services and indeed the initial hospital and medical treatments originated prior to termination.
We think the trial court erred. While the court's rationale may, in proper instances, be applicable to an accident and health policy, it is not applicable to hospitalization and medical expense policies which afford benefits only during the time of coverage. Here, coverage was provided to the plaintiff as a Blue Cross/Blue Shield group subscriber. Continuation of that coverage was to be furnished in consideration of payment in advance of the rates applicable for the type and extent of coverage specified in the contract. Thus, it appears coverage, to be effective, is dependent upon continued payment of premiums by the subscriber. It seems, therefore, axiomatic that upon termination of the contracts and cessation of premium payments, the only coverage available is that stipulated in the contracts. We note the lack of any stipulated posttermination benefits in the contracts in this case.
Admittedly, there is a paucity of authority on the question of an insurer's liability under a hospitalization or medical expense policy which terminates prior to completion of hospitalization and medical treatment. An insurer's liability under an accident policy which terminates after accidental injury but prior to completion of medical treatment has been the subject of more frequent litigation with the cases reaching contrary results, accounted for in part by difference in language of the policies. These views are discussed in an annotation in 75 A.L.R.2d 876.
In the absence of specific language to the contrary, a good argument can be made for extending the liability of an insurer under an accident policy for medical and hospital expenses incurred after the termination of the policy because these policies generally contemplate coverage for all such expenses incurred as a result of an accident which takes place within the policy period. On the other hand, a hospitalization or medical expense policy relates to all hospital and medical expenses incurred during the contract period regardless of whether they were occasioned by an accident.
This point is illustrated in Bartulis v. Metropolitan Life Ins. Co., 72 Ill. App.2d 267, 218 N.E.2d 225 (1966), in which the court construed a hospital and medical expense policy. There the plaintiff was a Standard Oil Company dealer. As such, he was a certificate holder of one of Metropolitan's group hospitalization and medical expense *973 policies issued to dealers and employees of Standard Oil Company Service Stations. The plaintiff was injured in May 1959. His group coverage was terminated effective July 31, 1959, by the trustees who administered hospital coverage for owners and employees of Standard Oil Company Service Stations. Bartulis received medical treatment in September and entered the hospital incurring expenses there until October 11, 1959.
In reversing a judgment in favor of the group policy holder, the Illinois court wrote:
"It seems crystal clear that the coverage provided was for confinement as a patient in a hospital while the policy was in force and surgery performed while the policy was in force. Neither event occurred during the life of the policy. Neither in such provisions nor elsewhere in the policy is there language suggesting that the policy could or should be read as providing coverage for hospitalization or surgery resulting from injuries sustained while the policy was in force. To so read this policy is to annex to it a coverage neither specifically stated nor reasonably implied. We would observe that Section 10 entitled `Benefits after Cessation of Insurance' provided that if a certificate holder is totally disabled as a result of injuries or sickness on the termination date of the policy, the hospitalization and surgery coverages continue, for a period of 31 days. If a female, and pregnancy exists on the termination date of the policy, coverage is extended over a period of 9 months for hospitalization and surgery resulting from such pregnancy. It is thus apparent that this is not only a limited coverage policy, but its post-termination coverage is likewise specifically limited to specific circumstances. Coverage for injuries sustained during the lifetime of the policy with hospitalization or surgery resulting therefrom thereafter is conspicuous by its absence. The clear implication is that there was no intention to provide such coverage."
See also, Cohen v. Northwestern National Life Ins. Co., 124 Ill. App.2d 15, 259 N.E.2d 865 (1970). Cf. Reliance Mutual Life Ins. Co. of Ill. v. Booher, 166 So.2d 222 (Fla.2d DCA 1964).
It likewise seems clear to us that there was no intent manifested in the policies before us to provide any posttermination coverage since these policies provide only limited specified benefits and contain no provisions for posttermination coverage.
The plaintiff, however, contends that coverage continued by virtue of the automatic termination provision in Section VII(d) which provides in part:
"Automatic Termination. Coverage for all subscribers covered under this contract shall immediately terminate on the earliest of the following dates:
(1) If this Contract is issued through a franchise group plan with an employer, the date coverage under this Contract is terminated and replaced by coverage under a contract issued by another insurer."
The argument is made that since the Fireman's Fund America policy which plaintiff's employer obtained as replacement coverage does not, in fact, provide plaintiff with coverage he would have had under Blue Cross/Blue Shield, therefore, the defendants have a liability. We reject this contention as being unsound. To accept this reasoning would mean that even though the old policies had been replaced by the employer with the policies from a different company, the old policies still remained effective to provide benefits in every instance where coverage under the new policies was not at least equal to that under the old policies. We think the defendants were entitled to conclude that their liability had terminated when the plaintiff's employer informed them that they had elected to replace their Blue Cross/Blue Shield coverage with a new policy from Fireman's Fund America.
Under the policies issued by the defendants, successive hospital confinements occurring within 90 days are considered one single confinement for determining a subscriber's entitlement to 31 days hospitalization for each confinement within a contract *974 year. Citing these provisions, plaintiff makes the further contention that decedent's second entry into the hospital was a continuation of his prior admission and that coverage is, therefore extended beyond the term of the contracts. We construe these single confinement provisions as limitations on the coverage and not as provisions which extended the coverage beyond the expiration of the term of the policies.
Accordingly, we hold that the coverage provided under the Blue Cross/Blue Shield contracts was available to the plaintiff only during the period for which he was a premium paying subscriber; that upon termination of the coverage by his employer and replacement with another group contract that his coverage was automatically terminated.
Under Section 627.666, Florida Statutes, effective October 1, 1975, a succeeding insurer on replacement of a group contract cannot specifically exclude expenses incurred in connection with an illness or injury sustained prior to the effective date of its policy. Unfortunately, this statute is of no comfort to the plaintiff in this case. Yet, it is not the function of the court to rewrite the policies or redefine the coverage contracted for by the parties.
Accordingly, summary judgment for the plaintiff is vacated and the trial court is directed to enter final judgment in favor of the defendants.
GRIMES and SCHEB, JJ., concur.
BOARDMAN, Acting C.J., dissents with opinion.
BOARDMAN, Acting Chief Judge (dissenting).
The issue presented in this case has been carefully considered for what may be regarded as an undue length of time. In my judgment the question posed demanded such attention. The opinion I had originally authored reached a contrary result from that of the majority. Accordingly I feel it necessary that I dissent and give my reasons for doing so. Although my colleagues, Judge Grimes and Judge Scheb, make a plausible distinction between the purposes of an accident and health policy and a hospitalization and medical expense policy I do not consider that argument to be persuasive and conclusive in view of the interpretation the average person would be expected to give to the terms and provisions of the two policies under our consideration. I could readily accept the majority's conclusion as to the finality of the Blue Cross automatic termination provision under the more typical circumstance where an insured did not require treatment for an illness or injury continuing beyond the termination date. I cannot agree though that under the terms of this policy the cessation of premium payments releases the insurer from liability arising from prior payments particularly where the policy does not explicitly and unequivocally provide that termination of coverage is effected simultaneously with the termination date of the policy.
The Blue Cross policy provided for automatic termination on the date that its hospitalization coverage was replaced by coverage issued under another carrier.[1] However neither policy expressly provided that those expenses incurred subsequent to termination or cancellation were not covered. Both policies provided that successive hospital confinements within 90 days constitute a single, continuous confinement, and both limit coverage to 31 days per confinement.[2] It is this language coupled with the absence of an explicit statement pertaining to coverage for continuing treatment which creates the uncertainty.
Cancellation of an insurance policy does not terminate the insured's right to recover for losses or expenses incurred subsequent *975 to the cancellation date if that right has vested. See generally Service Life Ins. Co. v. Branscum, 234 Ark. 463, 352 S.W.2d 586 (1962). The policies considered here vest a right to recover expenses incurred during a single hospital confinement regardless of the date the policies are cancelled. The holding of the Supreme Court of Washington in Myers v. Kitsap Physicians Service, 78 Wash.2d 286, 474 P.2d 109 (1970), a factual situation similar to the one before us, is persuasive. The contract in Myers stated that:
Kitsap Medical agrees to provide medical, surgical hospital and other services to each member enrolled hereunder, as occasion demands, during the life of this contract... .
The court held that the provision
is susceptible of the reasonable interpretation that the "life of the contract" is automatically extended to such time as may be required to medically treat and medically care for the injury or illness that occurs during the year of the contract. We find it difficult to believe that the "average man purchasing insurance" would, or could, contemplate from a reading of this contract that the defendant's obligation terminates when the clock strikes midnight and the contract year ends, even though the insured may still be hospitalized or in need of further medical treatment for an illness incurred during the contract year.
It is a universally accepted principle of law that uncertain or ambiguous language in a contract will be strictly construed against the party who drafted the instrument. E.g., Financial Fire & Casualty Co. v. Callaham, 199 So.2d 529 (Fla.2d DCA 1967). It would be extremely difficult to conclude that the average person reading these policies would understand that the policies excluded coverage for continuing treatment of an illness contracted or injury suffered prior to the termination date. If appellants, who drafted the policies, had so intended it would have been a comparatively simple matter to spell out clearly and succinctly that the carrier is not liable for expenses incurred subsequent to termination of the policy. Cf. Northeastern Life Ins. Co. v. Gaston, 470 S.W.2d 128 (Tex.Civ. App. 1971). The omission, whether by oversight or design, should not work to the detriment and prejudice of the insured. The legislature in its wisdom has been fit to take steps to see that this unfortunate situation will not arise in the future. In fairness, in my opinion, it should not be allowed to occur in this case.

ON REHEARING
Counsel for appellee having filed in this cause a Petition for Rehearing and the same having been considered by the Court, it is
ORDERED that said Petition be and the same is hereby denied.
GRIMES and SCHEB, JJ., concur.
BOARDMAN, C.J., concurs specially.
BOARDMAN, Chief Judge, specially concurring.
I have previously expressed my reason for disagreement with the majority; however, in view of the fact that no new issues have been raised in the Petition for Rehearing, I join in its denial.
NOTES
[1] The Blue Cross and the Blue Shield policies provided for termination when the insured left the franchise group or where the carrier cancelled the policy, neither is applicable here.
[2] The Blue Cross policy provided that

[e]ach subscriber is entitled to benefits . . when service is rendered during the covered period... .
The critical phrase is not "when service is rendered" but is "during the covered period."