Joan MOTE, Administratrix of the Estate of Dennis A. Mote, deceased; and Joan Mote, Guardian of Dennis A. Mote, an incompetent adult, Appellant (Plaintiff),

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee (Defendant).

No. 34A02–8903–CV–118.

Court of Appeals of Indiana, Second District.

March 13, 1990.

Floyd F. Cook, Kokomo, for appellant.

James R. Fleming, Simmons & Fleming, Kokomo, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Plaintiff-appellant Joan Mote (Mote), as the administratrix of Dennis Mote's (Dennis) estate, and as Dennis' guardian, appeals from the entry of summary judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm) claiming the trial court erred when it determined State Farm's insurance contract with Dennis did not cover expenses incurred after the contract had terminated.

We reverse.

## FACTS

The facts most favorable to the trial court's judgment reveal that Dennis pur-chased a health insurance policy from State Farm effective October 7, 1983. Dennis also purchased a catastrophic medical expense rider to supplement the policy's benefits. On November 11, 1983, while the policy was in force, Dennis was involved in an automobile accident in which he suffered severe injury. Dennis became comatose and remained in that condition until his death, almost five years later in August, 1988.

During Dennis' hospitalization, State Farm paid for all of the covered medical expenses Dennis incurred until May 1, 1986, the day Dennis became eligible for Medicare. The insurance policy provided that coverage would terminate the day before Dennis became eligible for Medicare.

Mote, as Dennis' guardian, brought suit in June, 1987, against State Farm seeking payment for the medical expenses incurred after the policy terminated. Both Mote and State Farm moved for summary judgment, and the trial court granted State Farm's motion on January 30, 1989.

## ISSUES

1. Whether the insurance policy's termination clause violated state and federal law?

2. Whether State Farm was liable for the expenses incurred after the insurance policy had terminated?

## DECISION

ISSUE ONE—Did the termination of the insurance policy because Dennis was eligible for Medicare violate state and federal law?

PARTIES' CONTENTIONS—Mote argues that State Farm could not terminate Dennis' insurance policy due to his eligibility for Medicare because state and federal law prohibits such termination. State Farm responds that the laws upon which Dennis relies are wholly inapplicable to the policy and the termination was proper.

CONCLUSION—The termination of the policy was proper.

■ Dennis' insurance policy with State Farm provided: "Coverage under this policy shall terminate with respect to any Covered Person on the day preceding the date such person becomes eligible for any benefit provided by Medicare and the premium will be adjusted accordingly on the billing date preceeding such eligibility." *Record* at 144.

Mote claims that Ind.Code 12–1–7–24.4 (1988) prohibits an insurance company from terminating an insurance policy because an individual is eligible for Medicare. IC 12–1–7–24.4 provides: "Any clause of an insurance contract, plan, or agreement administered by an insurer is void if it limits or excludes payments to an individual who is eligible for medical assistance."

This statute, however, relates to the administration of Medi*caid*, not Medi*care*. The "medical assistance" referred to in the statute is Medicaid. *See State, Department of Public Welfare v. Bair* (1984), Ind.App., 463 N.E.2d 1388, *trans. denied;* 470 IAC 5–1–1 (which provides "Medicaid" and "medical assistance" will be used interchangeably).

Medicaid is a jointly funded federal-state program established under Title XIX of the Social Security Act, § 1901, *et seq.,* 42 U.S.C. § 1396, *et seq.,* (1982) under which program health care providers are entitled to reimbursement for medical services rendered to eligible recipients. *Bair, supra.*

Medicare, on the other hand, is a federally funded health insurance program established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (1982) *Daviess County Hosp. v. Bowen* (7th Cir. 1987), 811 F.2d 338.

The insurance policy clearly states that Medicare, as used in the policy, "means Federal Health Insurance for the Aged, as provided under Title XVIII of the Social Security Act as enacted by the Social Security Amendments of 1965 as now constituted or hereafter amended." *Record* at 139.

Therefore, IC 12–1–7–24.4 is inapplicable and irrelevant to the insurance policy provision which provided that coverage would terminate when the individual insured became eligible for Medicare.

Mote next asserts that 42 U.S.C. § 1395y(b) prohibits State Farm from terminating coverage because Dennis became eligible for Medicare. However, § 1395y(b) merely excludes from payment by Medicare those expenses that are already paid by other insurance. It in no way prohibits insurance companies from terminating policies due to the insured's eligibility for Medicare, and it cannot reasonably be considered as such a prohibition. Mote cites no authority for this proposition nor bolsters it with any cogent argument.

ISSUE TWO—Was State Farm liable for the expenses incurred after the termination of the policy?

PARTIES' CONTENTIONS—Mote contends that the policy insured Dennis against accidental injury and therefore State Farm is liable for all the expenses that arise from the accident which occurred while the policy was in force. Mote therefore asserts the trial court erred when it entered summary judgment for State Farm and that the trial court should have granted her motion for summary judgment. State Farm replies that the insurance policy insures Dennis against incurring expenses and therefore it is not liable for any expense that was not incurred prior to the termination of the policy. State Farm claims the trial court properly granted summary judgment in its favor.

CONCLUSION—The trial court erred when it entered summary judgment for State Farm.

The critical inquiry is what triggers State Farm's liability. Is it the accidental injury or the expenses arising from that injury? While there are no Indiana cases from which we can draw to reach our conclusion, numerous jurisdictions have pondered the same question, so we look to them.

■ It seems to be established that when an insurance policy insures against accidental injury, the insured's right to receive insurance benefits is considered "vested" and termination of the insurance policy does not affect the insurer's liability

or its duty to pay benefits thereafter pursuant to the policy. *Houghton v. American Guaranty Life Ins. Co.* (3rd Cir.1982), 692 F.2d 289; *Sparks v. Republic Nat'l Life Ins. Co.* (1982), 132 Ariz. 529, 647 P.2d 1127; *Intercoast Mutual Life Ins. Co. v. Andersen* (1959), 75 Nev. 457, 345 P.2d 762; *Erwin v. United Benefit Life Ins. Co.* (1962), 70 N.M. 138, 371 P.2d 791; *Myers v. Kitsap Physicians Service* (1970), 78 Wash.2d 286, 474 P.2d 109; Annotation, *Insurers Liability Under Accident Policy Terminated After Accidental Injury But Prior To Completion Of Medical Treatment, Hospitalization, and The Like,* 75 A.L.R.2d 876 (1961).

Equally well-established is the rule that when a policy insures against the "incurrence of expenses," the benefits cease when the policy is terminated and the insurer is not responsible for expenses arising after the termination. *Blue Cross v. Dysart* (1976), Fla.App., 340 So.2d 970; *Cohen v. Northwestern Nat'l Life Ins. Co.* (1970), 124 Ill.App.2d 15, 259 N.E.2d 865; *Daly v. Golden Rule Life Ins. Co.* (1968), 95 Ill.App.2d 138, 237 N.E.2d 790; *Bartulis v. Metropolitan Life Ins. Co.* (1966), 72 Ill.App.2d 267, 218 N.E.2d 225; *Auto–Owners Ins. Co. v. Blue Cross & Blue Shield* (1984), 132 Mich.App. 800, 349 N.W.2d 238; *Jefferson v. State Farm Ins. Co.* (1988), 380 Pa.Super. 167, 551 A.2d 283; *Wulffenstein v. Deseret Mutual Benefit Ass'n.* (1980), Utah, 611 P.2d 360; Annotation, *Elimination of Particular Coverage, or Termination of Health, Hospitalization, or Medical Care Insurance Policy as Affecting Insurer's Liability for Insured's Continuing Hospitalization or Medical Expenses Relating to Previously Covered Illness,* 66 A.L.R.3rd 1205 (1975).

In all of these cases, attention is riveted on the construction of the language used in the policy. If the language used unambiguously hinges liability on incurring of expenses, then the courts have refused to extend the insurer's liability to expenses incurred after the policy terminated. *Dysart, supra; Cohen, supra; Daly, supra; Bartulis, supra; Auto–Owners, supra; Jefferson, supra; Wulffenstein, supra.*

If the courts have found the policy language to be ambiguous, the policy was determined to insure against accidents and the insurer was held liable for all expenses arising from an accident, including those incurred after the insurance policy had been terminated. *Houghton, supra; Sparks, supra; Intercoast, supra; Erwin, supra.* So the presence of ambiguity, or the lack of it, is crucial.

It has been said that ambiguity in an insurance contract exists only when it is susceptible to more than one interpretation and reasonably intelligent people would honestly differ as to its meaning; an ambiguity does not exist simply because the parties' interpretations of the contract differ. *Eli Lily & Co. v. Home Insurance Co.* (1985), Ind., 482 N.E.2d 467, *cert. denied* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990; *Landis v. American Interinsurance Exchange* (1989), Ind.App., 542 N.E.2d 1351. It is also said that the language of an insurance contract should be given its plain and ordinary meaning, and if it is ambiguous the policy's language will be strictly construed against the insurer and liberally construed in favor of the insured. *Miller v. Dilts* (1984), Ind., 463 N.E.2d 257; *Meridian Mutual Insurance Co. v. Cox* (1989), Ind.App., 541 N.E.2d 959.

Thus we must examine the policy and rider in question for ambiguity. The following provisions are relevant:

Policy Provisions:

"STATE FARM MUTUAL Automobile Insurance Company, a mutual insurance company herein called the Company, *promises to pay the benefits hereinafter specified for Injury* or Sickness of any Covered Person, subject to the provisions, limitations, and exceptions of this policy.

. . . Any refusal to renew this policy shall be without prejudice to any claim originating while this policy is in force."

*Record* at 136 (emphasis supplied).

"Injury means accidental bodily injury sustained by a Covered Person while this policy is in force with respect to such person *and shall include all injuries*

*sustained by such Covered Person as a result of any one accident."*

*Record* at 139 (emphasis supplied).

"Hospital Daily Benefit. Subject to a deductible amount of $100 per calendar year, the Company will pay the *actual expenses incurred* for hospital room and board for each day that a Covered Person is necessarily Confined as a resident inpatient in a Hospital, up to but not to exceed, for any day of Confinement, the Hospital Daily Benefit Maximum Amount specified in the Policy Schedule, *provided that such Confinement:*

　1.　*results from Injury* or Sickness as defined herein, and

　2.　*commences while this policy is in force* with respect to such Covered Person.

This benefit will be paid for as long as the Covered Person is so Confined, but not to exceed for any One Confinement the Maximum Benefit Period as specified in the Policy Schedule."

*Record* at 140 (emphasis supplied).

"*Coverage* under this policy shall terminate with respect to any Covered Person on the day preceding the date such person becomes eligible for any benefit provided by Medicare and the premium will be adjusted accordingly on the billing date preceding such eligibility.

The termination of coverage for any Covered Person or the termination of this policy shall be *without prejudice to any pending claim.*"

*Record* at 144 (emphasis supplied).

"Insured's Right to Request Cancellation. The Insured shall have the right to cancel this policy at any time by written notice delivered or mailed to the Company, effective upon receipt or on such later date as may be specified in such notice. In such event, the Company will return promptly the pro rata unearned portion of any premium paid. *Cancellation shall be without prejudice to any claim originating prior to the effective date of cancellation.*"

*Record* at 145 (emphasis supplied).

Rider Provisions:

"This Catastrophic Medical Expense Rider constitutes an additional benefit attached to and made a part of this policy. All of the provisions of the policy not in conflict with the provisions of this rider shall be made a part of this Catastrophic Medical Expense Rider; provided, however, that any Exclusion Endorsement attached to and made a part of this policy shall not apply to this rider unless specifically provided in such Exclusion Endorsement.

．　　．　　．　　．　　．

Injury means accidental bodily injury sustained by a Covered Person while this rider is in force with respect to such person *and shall include all injuries sustained by such Covered Person as a result of any one accident.*

．　　．　　．　　．　　．

Covered Medical Expenses means reasonable and customary charges incurred as a result of Injury or Sickness of a Covered Person for the following health care services and supplies to the extent they are necessary to the care and treatment of such Covered Person and prescribed by a Physician:

．　　．　　．　　．　　．

*An expense is deemed to be incurred* on the date of the service or purchase for which the charge is made."

*Record* at 149–50 (emphasis supplied).

"Benefits.

If, while this rider is in force, a Covered Person incurs Covered Medical Expenses during a calendar year in excess of the Threshold Amount, *the Company will pay,* subject to the provisions, exclusions and limitations of this rider, *benefits* for that Covered Person's Covered Medical Expenses incurred during such calendar year. The amount of such benefits payable under this rider is the amount by which all such Covered Medical Expenses incurred for that Covered Person during the calendar year exceed the Threshold Amount.

The total amount payable under this rider on behalf of each Covered Person shall not exceed the Catastrophic Medical

Expense Rider Lifetime Maximum Amount shown in the Policy Schedule." *Record* at 151 (emphasis supplied).

Comparing these provisions with those considered by other courts in other jurisdictions, we must conclude there is language in State Farm's policy which seems to insure against *both* injury and expenses incurred. There is ambiguity, so we must construe the policy liberally in favor of Mote. *Miller, supra; Meridian, supra.* It has long been true that insurance contracts are typically contracts of adhesion, and therefore any ambiguities are construed in favor of the insured. *Evans v. National Life Acc. Ins. Co.* (1984), Ind. App., 467 N.E.2d 1216. Ambiguous language in an insurance contract should be construed to further the policy's basic purpose of indemnity and is strictly construed against the insurer. *Eli Lily, supra; American Surety Co. v. Pangburn* (1914), 182 Ind. 116, 105 N.E. 769; *Milwaukee Guardian Ins. Inc. v. Reichhart* (1985), Ind.App., 479 N.E.2d 1340, *trans. denied; Nationwide Mutual Ins. Co. v. Neville* (1982), Ind.App., 434 N.E.2d 585; *Farmers Mutual Aid Ass'n. v. Williams* (1979), 179 Ind.App. 514, 386 N.E.2d 950; *Patton v. Safeco Ins. Co.* (1971), 148 Ind.App. 548, 267 N.E.2d 859. While this rule may appear to insurers to subject them to playing with a stacked deck in the interpretation of their insurance policies, they have first access to the deck because they write the policies.

As indicated above, our reading of the policy and the rider indicates conflicting interpretations as to whether payments are to be made based on an event (accident or disease) or on the incurring of hospital expenses. State Farm points to the benefit portion of the policy and rider and claims that because it limits benefits to expenses actually incurred, the policy insures only against expenses and not accidental injury. However, the first sentence of the policy states that State Farm "promises to pay the benefits hereinafter specified for Injury...." *Record* at 136. While not conclusive, this sentence suggests that benefits are payable if the insured is injured, not only if expenses are incurred. The event which appears to be insured against is injury, not expense. The fact that the benefits for an injury are limited does not necessarily suggest that the insurer's *liability* for the benefits does not attach until the expenses are incurred.

The termination clause of the policy, provides that *coverage* terminates, but does not explicitly provide that *benefits* will also cease with the policy's termination. The clause also provides that termination will be without prejudice to any pending claim. Neither "coverage" nor "claim" are defined in the policy. State Farm argues that the definition of "claim" can be inferred from its use in other sections of the policy, and that a "claim" is merely a demand for payment after an expense is incurred. While that meaning can be inferred from some portions of the policy, the previously cited sections suggest that "claim" might also encompass the *right* to demand payment that arises with the injury.

The court in *Intercoast, supra,* considered a policy which provided that termination would be without prejudice to any claim *originating* while the policy was in effect. The court concluded that the policy covered expenses incurred after the termination because "claim" was not defined and could be construed as "cause of action".

Other portions of State Farm's policy also refer to "claims originating" under the policy, which allow cancellation of the policy without prejudice to such claims. While those provisions are not in effect here, because the policy was terminated, not cancelled, the provisions clearly imply that the expiration of the policy does not terminate the *benefits* provided.

While some courts have concluded an insurance policy insures only against expenses when it contains language that limits its benefits to expenses *actually* incurred, *see Cohen, supra; Daly, supra,* those courts did not consider policies which contained *additional* language which suggest the policy insures against accidental injury.

The court in *Erwin, supra,* construed a policy which explicitly stated it insured only against expenses. However, because

one policy provision provided that if the insured was diagnosed with a specific disease, originating while the policy was in force, the company would pay benefits, the court concluded the policy was ambiguous and construed it against the insurer.

In each of the cases in which the court ultimately determined the policy insured only against expenses, the policy being construed was a *group* policy and each had termination provisions which clearly provided that insurance coverage ended automatically when the insured left the group being insured. *See Dysart, supra; Auto–Owners Insurance; Jefferson, supra; Wulffenstein, supra.*

The courts that have considered insurance policies containing some language suggesting that the event insured against was accidental injury, each decided the policy was ambiguous and coverage was allowed for expenses incurred after the poli-cy had terminated. *Houghton, supra; Sparks, supra; Erwin, supra.*

Because the provisions of State Farm's policy can be reasonably read to insure against accidental injury and cover expenses incurred after the policy expires, we must conclude the trial court erred when it entered summary judgment in favor of State Farm, and that Mote is entitled to summary judgment as a matter of law.

The trial court's judgment is reversed and remanded for further proceedings consistent herewith.

SHIELDS, P.J., and GARRARD, J., concur.