Randall L. GLANDER, Anne Glander, and Rebecca Glander, By Her Next Friend Randall L. Glander, Plaintiffs,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, Defendant.

No. 1:04–CV–168.

United States District Court, N.D. Indiana, Fort Wayne, Division.

Dec. 8, 2004.

Daniel J. Borgmann, R. David Boyer II, Helmke Beams Boyer and Wagner, Fort Wayne, IN, for Plaintiff.

Christopher M. Forrest, Kathryn A. Brogan, Rothberg Logan & Warsco LLP, Fort Wayne, IN, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. INTRODUCTION

On May 29, 2003, Defendant Mutual of Omaha Insurance Company ("Mutual of Omaha") informed Plaintiffs Randall Glander ("Randall"), his wife, Anne Glander ("Anne"), and their minor daughter, Rebecca Glander ("Rebecca"), that it would not renew their medical insurance policy ("the Policy") after its expiration on November 1, 2004. The Glanders responded by bringing this suit, in which they seek a declaration that Mutual of Omaha must continue paying medical insurance benefits for Rebecca until her twenty-first birthday.[1] According to the Glanders, the terms of the Policy prohibit Mutual of Omaha from refusing to renew the Policy until Rebecca turns twenty-one. In the alternative, the Glanders argue that even if Mutual of Omaha is permitted to not renew the Policy, Rebecca's benefits are "vested" and thus Mutual of Omaha is still on the hook for her medical expenses until she is twenty-one.

The parties have now filed cross-motions for summary judgment, and Mutual of Omaha has filed a motion to strike.[2] For the reasons given below, Mutual of Omaha's motion for summary judgment and motion to strike will both be GRANTED, and the Glanders' motion for summary judgment will be DENIED.

### II. FACTUAL AND PROCEDURAL BACKGROUND[3]

---

1. Subject matter jurisdiction arises under 28 U.S.C. § 1332. The Glanders are residents of Indiana (Compl. ¶ 2), Mutual of Omaha is a resident of Nebraska (Notice of Removal ¶ 3), and the amount in controversy exceeds $75,000 (id. ¶ 5).

2. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

3. The facts of this case are not in dispute. Thus, for brevity's sake, they are recited here without citation to the record.

Mutual of Omaha first issued the Policy to Randall on October 18, 1986. Rebecca was born on November 30, 1987, and shortly thereafter, she was diagnosed with mild right-side hemiplegia, a congenital birth defect.[4] Rebecca's coverage under the Policy was governed by Part L, entitled "DEPENDENTS PROVISIONS," which is set forth in relevant part below:

1. **Eligibility:** (a) Eligible dependents include your spouse and dependent children under age 19 (23 if a full-time student) . . . .

2. **Newborn Children:** Your children born while this policy is in force will be insured automatically from birth until: (a) the 31st day following birth; or (b) the first day of the second month following birth, whichever is longer. A newborn's coverage may be continued, without evidence of insurability, if we receive your written request and premium before the period of automatic coverage is over. Benefits are payable for medically diagnosed congenital defects and birth abnormalities during the period of automatic coverage; thereafter, only if you exercise your right to continue the newborn's coverage without lapse . . . .

3. **Children Termination:** Coverage for each child will end on the renewal date following his or her 21st birthday (25th birthday if a full-time student) or marriage, whichever is first. If we accept premium after age 21 (or age 25 if a student) or after we receive notice of marriage, coverage will continue until the end of the period for which premium was accepted . . . .

Under these provisions, Rebecca was automatically covered at birth. The Glan-

ders promptly provided Mutual of Omaha with a premium payment and request to continue coverage for Rebecca beyond this automatic coverage, as contemplated by Part L(2). In return, they received benefits for Rebecca's medical expenses under Part H of the Policy, titled "BENEFITS BEFORE MEDICARE ELIGIBILITY DATE":

When you or a dependent incurs expense for an injury or sickness, we will pay the Specified Percentage of such expense that is in excess of the applicable Deductible Amount, if any. The Deductible Amount must be satisfied by each person for each claim. Benefits are limited to: (a) the Maximum Benefit for each person for each accident or sickness; and (b) expense incurred after the Deductible Amount has been satisfied . . . .

Part F of the Policy limits these benefits by stating that, *inter alia,* "[n]o benefits are payable for . . . confinement or expense that begins while this policy is not in force."

The Policy defines "dependent" as "a person eligible in accordance with Part L." It defines an "expense" as follows:

"Expense" means expense incurred for the Covered Services and Supplies listed in Part H. The services and supplies must be ordered or prescribed by a physician as needed for diagnosis or treatment. . . . Expense for a service or supply is considered incurred on the date it is received.

The term of the Policy's coverage is also expressly defined, in Part O ("TERM OF COVERAGE"):

Your coverage starts on the Policy Date at 12:01 a.m., Standard Time where you

---

4. Hemiplegia is "[p]aralysis or weakness in the arm, leg, trunk, and sometimes the face on one side of the body only." *The Am. Med. Ass'n Encyclopedia of Med.* 528 (1989).

live. It ends at 12:01 a.m., the same Standard Time, on the First Renewal Date. Each time you renew your policy by paying the premium within the 31–day grace period, the new term begins when the old term ends.

Subsequently, Randall removed himself and his wife as covered persons under the Policy, but left himself as the premium payor and Rebecca as the sole-covered dependent. Since Rebecca's birth and pursuant to Part H of the Policy, Randall has received benefits from Mutual of Omaha in connection with medical care relating to Rebecca's hemiplegia.

On February 17, 2003, Mutual of Omaha announced its decision to exit the individual major medical market throughout the country and as a result, it has not renewed its individual major medical policies in Indiana, including those similar to the Policy issued to Randall. On May 29, 2003, Mutual of Omaha notified Randall of its decision to exit the market and accordingly, not renew his insurance policy, which therefore expired on November 1, 2004.

The Policy provides for non-renewal on the first page at Part C by stating "[Mutual of Omaha] can refuse to renew your policy only when we do the same thing on all policies of this Form, with the same provisions and benefits, issued to persons of the same classification in the same geographic area of your state." At the bottom of the page in a larger, bold-face font, is this statement: **"This Policy is Renewable as Stated in Part C."** Part P(4) further limits Mutual of Omaha's ability to exercise its non-renewal option:

We can't refuse to renew your policy as specified in the Renewal Agreement until it has been in force for at least one year. Then we can refuse renewal only on the renewal date that coincides with or is nearest and after the annual anniversary of its date of issue or last reinstatement. You will receive written notice of non-renewal at least 30 days before the premium due date. Non-renewal will not affect an existing claim.

The Glanders responded to Mutual of Omaha's notice of non-renewal by filing the instant lawsuit.

## III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

Where there are no genuine issues of material fact, contract interpretation is a matter well-suited for summary judgment. *Anstett v. Eagle–Picher Indus., Inc.*, 203 F.3d 501, 503 (7th Cir.2000). An insurance policy is interpreted as any other contract,

and thus construction of an insurance policy is a question of law for which summary judgment is particularly appropriate. *Piers v. Am. United Life Ins. Co.,* 714 N.E.2d 1289, 1290 (Ind.Ct.App.1999).

## IV. DISCUSSION[5]

■ When interpreting an insurance contract, the goal is to honor the intent of the parties as manifested in the contractual language. *State Farm Mut. Auto. Ins. Co. v. Spotten,* 610 N.E.2d 299, 300 (Ind. Ct.App.1993). In accomplishing that goal, courts must construe the insurance policy as a whole, rather than considering individual words, phrases, or paragraphs. *Westfield Companies v. Knapp,* 804 N.E.2d 1270, 1274 (Ind.Ct.App.2004).

■ Clear and unambiguous language in an insurance policy must be given its plain and ordinary meaning. *USA Life One Ins. Co. of Ind. v. Nuckolls,* 682 N.E.2d 534, 537–538 (Ind.1997). However, if the language of the policy is ambiguous, courts should apply the rules of contract construction in interpreting the language. *Progressive Ins. Co. v. Harger,* 777 N.E.2d 91, 97 (Ind.Ct.App.2002)(citing *Nuckolls,* 682 N.E.2d at 538). When an insurance policy contains an ambiguity, it should be strictly construed against the insurance company. *Id.*

■ An ambiguity does not arise merely because the two parties proffer differing interpretations of the policy language. *Nuckolls,* 682 N.E.2d at 538. Rather, the policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." *Id.* (quoting *Commercial Union Ins. v. Moore,* 663 N.E.2d 179 (Ind.Ct.App.1996)).

■ The Glanders believe that Mutual of Omaha should continue to cover Rebecca's medical expenses until her twenty-first birthday, and they proffer two arguments to support that result. First, they contend that Mutual of Omaha is prohibited from refusing to renew the Policy before Rebecca's twenty-first birthday. In the alternative, they argue that even if Mutual of Omaha is allowed to refuse to renew the Policy before that time, it is still liable for Rebecca's medical bills until she is twenty-one because her benefits have "vested." Neither argument is persuasive.[6]

### A. Mutual of Omaha Is Entitled to Not Renew the Policy

■ An insurance company is under no obligation to renew policies of long-time insureds, so long as there is no clause in the policy imposing a duty of renewal. *See Egnatz v. Medical Protective Co.,* 581

---

5. Although the Policy does not specify what state's law should apply to this case, the parties agree it should be Indiana law. (Pl.'s Br. in Supp. at 6–7; Def.'s Br. in Supp. at 6.) Moreover, it appears that Indiana is the forum with the most intimate contacts to the facts. *See Bedle v. Kowars,* 796 N.E.2d 300, 302 (Ind.Ct.App.2003) ("Indiana's choice of law rule for contract actions calls for applying the law of the forum with the most intimate contacts to the facts"). Thus, the Court will apply Indiana law.

6. The Glanders also make a procedural argument, namely that their motion for summary judgment should be granted due to Mutual of Omaha's failure to provide a "Statement of Genuine Issues" under Fed.R.Civ.P. 56 and Local Rule 56.1. This argument is meritless. Both parties agree that there *are no* genuine issues of material fact; the only issue is the proper interpretation of the Policy. In other words, Mutual of Omaha agrees with the Glanders' recitation of the facts, but believes that it is nonetheless entitled to summary judgment on those facts. It should go without saying that Mutual of Omaha need not provide a "Statement of Genuine Issues" under these circumstances.

N.E.2d 438, 440 (Ind.Ct.App.1991). Here, Part C of the Policy provides that Mutual of Omaha may refuse to renew as long as it "do[es] the same thing on all policies of this Form, with the same provisions and benefits, issued to persons of the same classification in the same geographic area of [the Glanders'] state." It is undisputed that Mutual of Omaha is now refusing to renew all of its individual medical insurance policies throughout the country. Therefore, under the unambiguous terms of Part C, Mutual of Omaha is entitled to not renew the Policy issued to the Glanders.

■ However, the Glanders believe that the "DEPENDENTS PROVISIONS" of Part L contradict Part C, or at least create an ambiguity that should be construed in their favor. In particular, they seize on Part L(3), which states that "[c]overage for each child will end on the renewal date following his or her 21st birthday." [7] The Glanders read this language as a promise by Mutual of Omaha to continually renew the Policy until Rebecca turns twenty-one.

The Glanders' reading of the Policy is not reasonable. Reading Part L as a whole, rather than focusing on just the language quoted above, it is clear that this section of the Policy concerns only a dependent's eligibility for benefits. The language directly before Part L(3) describes what a dependent is, when a dependent first becomes eligible for coverage, and what is necessary to continue a dependent's coverage. Part L(3) then completes the picture by explaining when a dependent's eligibility ends. All of these provisions *assume* that the Policy is still in force—they do not *promise* that the Policy

will remain in force, as the Glanders contend.

Moreover, the Glanders' interpretation creates an unnecessary conflict with Parts C, O, and P(3) of the Policy. Part O ("TERM OF COVERAGE") states that "your coverage starts on the Policy Date [and ends] on the First Renewal Date," and that "[e]ach time you renew your policy by paying the premium, ... the new term begins when the old term ends." Parts C and P(3) complement this clause by setting out the conditions under which, despite tender of a premium, Mutual of Omaha may decline to renew the Policy. But if the Glanders' interpretation of Part L is accepted, then all of these provisions become superfluous, as Mutual of Omaha is required to renew the Policy continually until Rebecca's twenty-first birthday.

In short, the Glanders' interpretation of the Policy can only be accepted by tearing Part L(3) out of its context and rendering several other provisions meaningless. Such a reading is unreasonable, and accepting it would run afoul of this Court's duty to consider the Policy as a whole, *Westfield Companies*, 804 N.E.2d at 1274, and to interpret it in a way that harmonizes all of its provisions, *First Fed. Savings Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind.1990). Accordingly, the Court rejects the Glanders' argument that Part L(3) requires Mutual of Omaha to continually renew the Policy until Rebecca's twenty-first birthday. To the contrary, Mutual of Omaha is entitled to refuse to renew the Policy when the conditions of Parts C and P(4) are met, and it is undisputed that they have been met.[8]

---

7. The full language states that coverage ends on the "21st birthday (25th birthday if a full-time student) or marriage, whichever is first." This opinion simply uses "21st birthday" as a

shorthand, since the difference is immaterial here.

8. The Glanders also argue that, because Part L supposedly automatically renews the Policy

### B. The Policy Covers Expenses, Not Injuries

■ The Glanders' alternative position is that even if Mutual of Omaha is entitled to not renew the Policy, it still must continue paying benefits for Rebecca because those benefits have "vested." The Glanders argue that the Policy insures them against "injuries," and because Rebecca suffered her injury while the Policy was in force, Mutual of Omaha must continue to provide benefits for that injury until she turns twenty-one (or until the maximum benefit of $1,000,000 is reached). Mutual of Omaha responds that the Policy covers only "expenses" incurred due to injuries, not the injuries themselves; therefore, it is not liable for any expenses Rebecca incurs after the Policy's non-renewal on November 1, 2004.

The parties both focus their arguments on *Mote v. State Farm Mut. Auto. Ins. Co.*, 550 N.E.2d 1354 (Ind.Ct.App.1990), the leading Indiana case on whether an insurance policy covers "injury" or "expense." *See Granack v. Cont'l Cas. Co.*, 977 F.2d 1143, 1146 (7th Cir.1992) (noting that *Mote* is the only Indiana case facing this issue). In *Mote*, the court surveyed cases from other jurisdictions and discerned the following principles:

> It seems to be established that when an insurance policy insures against accidental injury, the insured's right to receive insurance benefits is considered "vested" [when the injury occurs] and termination of the insurance policy does not affect the insurer's liability or its duty to pay

benefits thereafter pursuant to the policy.... Equally well-established is the rule that when a policy insures against the "incurrence of expenses," the benefits cease when the policy is terminated and the insurer is not responsible for expenses arising after the termination.

550 N.E.2d at 1356–57 (internal citations omitted).

At first blush, it seems clear that the Glanders' Policy insures only against expenses and thus falls into the latter category. Part H, "BENEFITS BEFORE MEDICARE ELIGIBILITY DATE," provides that benefits are payable when "you or a dependent incurs expense for an injury or sickness." Part G, "DEFINITIONS," defines an "expense" as an "expense incurred for the Covered Services and Supplies," and specifies that "[e]xpense for a service or supply is considered incurred on the date it is received." Moreover, the very first clause of Part F, "EXCEPTIONS AND LIMITATIONS," states that "No benefits are payable for ... confinement or expense that begins when this policy is not in force." Taken together, these provisions unambiguously show that the Policy covers only expenses due to injury, and only those expenses which are incurred while the Policy is in force.

The Glanders, however, argue that other provisions in the Policy create ambiguity, relying heavily on *Mote*. In *Mote*, the court acknowledged that the policy at issue explicitly limited benefits to "expenses ... incurred," but found additional language

---

until Rebecca's twenty-first birthday, Mutual of Omaha is actually "cancelling" the Policy rather than "non-renewing" it. Since this argument is based on the tortured reading of Part L rejected *supra*, it has no merit.

The Glanders also make a confused argument that Mutual of Omaha is improperly relying on the federal Health Insurance Portability and Accountability Act ("HIPAA"), 42

U.S.C. § 300gg *et seq.*, to justify not renewing the Policy. But Mutual of Omaha is not using HIPAA as justification for non-renewal; rather, HIPAA merely creates extra conditions with which Mutual of Omaha must comply (and undisputedly has complied) when refusing to renew. (*See* Def.'s Br. in Supp. at 8–9.) Thus, this argument is also unavailing.

suggesting that the policy insured against injury. *Id.* at 1359–60. The resulting ambiguity was construed against the insurer, and thus the policy was held to insure against injury. *Id.* The *Mote* court reached this result for two primary reasons, neither of which applies here.

First, in *Mote,* the very first sentence of the policy stated that the insurer "promises to pay the benefits hereinafter specified *for injury.*" *Id.* at 1359. The court held that "this sentence suggests that benefits are payable if the insured is injured, not only if expenses are incurred." *Id.* However, no comparable language can be found in the Glanders' Policy. The Glanders point to Part L(2), "DEPENDENTS PROVISIONS–Newborn Coverage," which contains a clause reading: "Benefits are payable for medically diagnosed congenital defects and birth abnormalities during the period of automatic coverage." But as discussed *supra,* Part L is properly read as a discussion of dependent eligibility. Therefore, it is not reasonable to read this language as a "vesting" of benefits upon diagnosis of a congenital defect or birth abnormality. In short, Part L does not describe *what* benefits are payable, but rather describes *when* dependents are eligible for benefits—and benefits are clearly limited to "expenses" by Parts F, G, and H. Unlike in *Mote,* the Policy contains no language which reasonably suggests that it insures against injury.[9]

The *Mote* court's second consideration was that the policy "[did] not explicitly provide that *benefits* will ... cease with the policy's termination"; rather, the poli-

cy only provided that "coverage" would cease. *Id.* Here, the Policy does not suffer from such an omission; as noted above, it unambiguously states in Part F that "[n]o benefits are payable for ... confinement or expense that begins when this policy is not in force."

In short, the ambiguous language in the *Mote* policy suggesting that "injuries" triggered liability is not present in the Glanders' Policy, and therefore *Mote* is inapposite. While the Glanders provide a laundry list of other Policy provisions which they find ambiguous (Pl.'s Br. in Supp. at 15–16), their arguments are unpersuasive. As Mutual of Omaha aptly notes, the Glanders have merely "scoured the entire Policy for any mention of 'accident' or 'injury,' in order to argue that wherever such language exists, an ambiguity exists as well." (Def.'s Reply at 9.) But the Court must read the Policy as a whole, *Westfield Companies,* 804 N.E.2d at 1274, and doing so reveals that it unambiguously provides benefits for *expenses* only, not *injuries.* Accordingly, the Glanders's claim that Rebecca's benefits are "vested" through age twenty-one fails.

### C. No Extrinsic Evidence May Be Considered

 If the language of an insurance policy is unambiguous, a court may not consider extrinsic evidence to cast doubt on its meaning. *E.g., RMJ Enter., Inc. v. Scottsdale Ins. Co.,* 808 N.E.2d 159, 163 (Ind.Ct.App.2004). The Glanders have introduced evidence of two letters they received from Mutual of Omaha regarding

---

9. The implausibility of the Glanders' reading is highlighted by their selective quotation of Part L(2). (*See* Pl.'s Resp. at 9.) The language they rely on is only part of a sentence, with the full sentence reading: "Benefits are payable for medically diagnosed congenital defects and birth abnormalities during the period of automatic coverage; *thereafter, only if*

*you exercise your right to continue the newborn's coverage without lapse* " (emphasis added). If benefits "vested" immediately upon "injury," as the Glanders contend, the second part of this sentence would be superfluous, as benefits would continue whether or not the Glanders "exercise[d]" their "right to continue ... coverage."

the non-renewal of the Policy. Since the Policy is unambiguous (as explained *supra*), Mutual of Omaha's motion to strike this evidence is granted.

## V. CONCLUSION

For the above reasons, Mutual of Omaha's motion for summary judgment (Docket #18) and motion to strike (Docket #20) are GRANTED, and the Glanders' motion for summary judgment (Docket #15) is DENIED. As oral argument is unnecessary, the Glanders' motion for oral argument (Docket #17) is also DENIED. The Clerk is directed to enter judgment in favor of Mutual of Omaha and against the Glanders.