William J. GARDNER, Plaintiff,

v.

UNION NATIONAL LIFE INSURANCE COMPANY, a Corporation, Defendant.

No. CV–90–A–1326–N.

United States District Court, M.D. Alabama, N.D.

Dec. 6, 1991.

tain policies of insurance, Count 2 seeks damages for alleged bad faith refusal to pay benefits, and Count 3 alleges fraud and misrepresentation. For the reasons stated hereafter, the court is of the opinion that the motion for summary judgment is due to be granted and the cause dismissed.

## I. FACTUAL BACKGROUND

The material facts are without dispute.

In July, 1985, the plaintiff, William J. Gardner, purchased several insurance policies from the defendant, Union National Life Insurance Company. The policies, all bearing effective dates of July 15, 1985, were as follows:

Policy Number 8528 02451, providing convalescent benefits upon termination of hospital confinement.

Policy Number 8528 02453, providing surgical and maternity benefits.

Policy Number 8528 02450, providing life insurance and benefits for loss of eyesight and limbs.

Policy Number 8528 02454, providing limited benefits for specified losses from accidental bodily injury.

Policy Number 8528 02452, actually a rider to Policy Number 8528 02454, the accident policy, providing limited accident care benefit of $50 for the initial treatment following an accident and hospital confinement benefits for hospital confinement beginning within 30 days after the insured received bodily injury from an accident.

The only policies now in issue before the court are 8528 02451 (hereinafter referred to as the "Convalescent Benefits policy") and 8528 02453 (hereinafter referred to as the "Surgical Benefits policy").[1]

On September 28, 1988, the plaintiff was injured in an accident and treated in an emergency room. The policies in question

Charles H. Morris, III, Selma, Ala., for plaintiff.

James H. Anderson, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

This case is before the court on the defendant's motion for summary judgment as to each count of plaintiff's three-count complaint. Count 1 claims benefits under cer-

---

1. Although the other policies are referred to in the complaint, the plaintiff has not contended in opposition to defendant's motion that benefits are due under them. No benefits are due under 8528 02450, because the plaintiff did not die or suffer loss of eyesight or limb. No benefits are due under 8528 02454, because none of the specified losses resulted from the accident. It is agreed that the $50 accident care benefit was paid under 8528 02452, and no hospital benefit is due thereunder, because the plaintiff's hospitalization occurred more than 30 days after the accident.

were in full force and effect at that time. Plaintiff subsequently stopped paying premiums for the policies, however, and they lapsed. The last premium payment was made on November 10, 1988, to cover the month of October, and the policies lapsed for nonpayment of premiums on or about November 30, 1988, following a thirty-day grace period.

Plaintiff was hospitalized from January 17 to January 21, 1989, for injuries received in the September, 1988, accident. Defendant refused to pay any benefits relating to this hospitalization under the policies in question on the ground that the hospitalization occurred at a time when the policy was no longer in full force and effect, coverage having terminated a month and a half earlier because of nonpayment of premiums.

On November 14, 1990, plaintiff filed this suit in the Circuit Court of Montgomery County, Alabama. Defendant subsequently removed the case to this court on the basis of diversity of citizenship. The court, therefore, has jurisdiction by virtue of 28 U.S.C. § 1332.

## II. ISSUE

The initial issue is whether the policies in question, after their lapse for nonpayment of premiums, provided any benefits for injuries received in an accident that happened before the lapse and while the policies were still in force.

## III. DISCUSSION

### A. General Principles

■ In analyzing the issue presented, certain general principles should be kept in mind. In Alabama, insurers have the right, absent statutory provisions to the contrary, to limit their liability and write policies with narrow coverage. *Turner v. United States Fidelity & Guaranty Co.*, 440 So.2d 1026 (Ala.1983). If an insurance policy is ambiguous in its terms, the policy must be construed in a manner most favorable to the insured. *Employers Ins. Co. of Alabama v. Jeff Gin Co.*, 378 So.2d 693 (Ala.1979). Where, however, there is no ambiguity in its terms, the insurance contract must be enforced as written, and the court cannot defeat express provisions by rewriting the contract nor by judicial interpretation. *Monninger v. Group Ins. Service Center, Inc.*, 494 So.2d 41 (Ala.1986).

Thus, in order for the plaintiff to prevail, the policies must either (1) clearly provide coverage after lapse for benefits relating to an accident which happened before lapse, or (2) contain ambiguities which, when construed in a manner most favorable to the insured, require a finding of such coverage.

From a study of the cases cited by the parties and other cases where similar issues were involved, it is apparent that the key to resolving the question of whether insurance benefits will continue after the insurance policy lapses is to first determine the nature of the loss against which the policy insures. Does the policy insure against accidental injury or against the incurrence of expenses? If the answer to this question is clear from the policy, leaving no room to construe ambiguities, then the answer to the issue is clear as well. The Court of Appeals of Indiana, in the case of *Mote v. State Farm*, 550 N.E.2d 1354 (1990), stated it as follows:

It seems to be established that when an insurance policy insures against accidental injury, the insured's right to receive insurance benefits is considered "vested" and termination of the insurance policy does not affect the insurer's liability or its duty to pay benefits thereafter pursuant to the policy. (Citations omitted.) Equally well-established is the rule that when a policy insures against the "incurrence of expenses", the benefits cease when the policy is terminated and the insurer is not responsible for expenses arising after termination. (Citations omitted.)

Defendant appropriately relies upon the case of *Monninger v. Group Insurance Service Center, Inc.*, 494 So.2d 41 (Ala. 1986) as authority for its position in this case. *Monninger* involved a group health insurance policy providing for payment for physician's fees while an insured was hos-

pitalized as a result of accidental bodily injury or sickness. The policy provided that coverage would end when employment was terminated. The insured injured his foot and was treated but not hospitalized. The next week employment terminated, and the payment of premiums ceased. Nineteen days later the plaintiff was hospitalized and incurred medical expenses admittedly resulting from the injury to his foot. The insurer denied payment on the basis that coverage terminated before the expenses were incurred. The Supreme Court of Alabama agreed and refused to construe the policy to provide coverage after termination of coverage for treatment of an injury which occurred prior to coverage termination. The Court noted that the policy clearly provided that coverage ceased at the termination of employment, and there was no extension of benefits provision which applied to the facts.

A like result was reached by the Illinois Appellate Court in *Bartulis v. Metropolitan Life Insurance Co.*, 72 Ill.App.2d 267, 218 N.E.2d 225 (1966).

The differing interpretations placed upon accident policies from those placed upon hospitalization or medical expense policies were discussed by the District Court of Appeal of Florida, Second District, in *Blue Cross of Fla., Inc. v. Dysart*, 340 So.2d 970 (1977). The Court said,

> In the absence of specific language to the contrary, a good argument can be made for extending the liability of an insurer under an accident policy for medical and hospital expenses incurred after the termination of the policy because these policies generally contemplate coverage for all such expenses incurred as a result of an accident which takes place within the policy period. On the other hand, a hospitalization or medical expense policy relates to all hospital and medical expenses incurred during the contract period regardless of whether they were occasioned by an accident.

The court held that the group medical and hospital policies in question, which provided limited specified benefits and did not contain any provision for post-termination coverage, did not afford coverage to the plaintiff for expenses incurred after termination of the policies, even though the accident which caused the hospitalization and medical services occurred prior to termination.

### B. The Policy Claim

The policies at issue in this case are not accident policies. One of the policies in the package purchased by the plaintiff, but not in controversy in this suit, 8528 02454, was an accident policy, labeled "General Accident Policy" and providing benefits for loss of life, limb or sight. That policy's rider, 8528 02452, provided additional limited benefits for confinement resulting from accidental bodily injury. The policies at issue provide specific benefits which, although they may be occasioned by an accident, are not necessarily related to accidental cause.

The Convalescent Benefits policy states at the top "Income Replacement For Convalescence Following Hospital Confinement." Its insuring clause is as follows:

> Convalescent Benefits: Union National Life Insurance Company ... will pay to the Insured a convalescent benefit beginning upon termination of hospital confinement. The amount of such benefit shall be at the rate of the Daily Indemnity specified in the Schedule and shall continue while the Insured is living for a period (not to exceed the maximum) equal to the number of days during which the Insured shall have been necessarily confined in a licensed hospital under the care of a licensed practicing physician by reason of illness which first manifests itself twenty-eight (28) days from date of issue or an accident which occurs while this Policy is in force.

The Surgical Benefit policy states at the top, "Surgical and Maternity Benefit Policy." Its insuring clause provides as follows:

> Surgical and Maternity Benefits: Union National Life Insurance Company ... will pay the benefits described in this Policy to the Insured upon receipt of proof that the Insured has sustained loss from Surgical or Maternity expense as

provided in this Policy, subject to the conditions and limitations contained herein....

Surgical and maternity expense covers:

A. Accidental injuries involving surgery, except hernia, occurring after the policy date.

B. Illness or disease involving surgery, except those enumerated in "C" and "D" below, which first manifests itself after this Policy has been maintained in force for not less than twenty-eight (28) consecutive days from the Policy Date.

C. Herniotomy, tonsillectomy, adenoidectomy and surgery on any female organ after 6 months from the Policy Date.

D. Delivery of a child or children if Policy has been continuously in force for not less than nine (9) months.

Since a monthly payment of premium was selected, both policies provided term insurance on a monthly basis, and the policies stated that their consideration was the application and the payment of the premiums shown on or before each due date. Both policies allowed the insured a grace period of four weeks after a monthly premium was due within which to pay the premium and keep the policy in force, and provided that if the premium was still not paid during that four-week period, "this Policy shall thereupon terminate and all coverage under this Policy shall cease after such termination date." Neither policy contained any extension of benefits provision by which the insurer agreed to extend any benefits whatsoever beyond the termination of the policy. These policies clearly provided coverage for specified benefits, required the payment of monthly premiums as consideration for that coverage, and provided that the policy would terminate and all coverage cease if the premium was not paid within four weeks after it was due. Nowhere does either policy say, or even suggest, that an insured may "drop the policy" by stopping payment of premiums and still be entitled to coverage for expenses related to an accident which occurred before the policy was dropped.

■ As to the Convalescent Benefits policy, the plaintiff argues that the reference in the insuring clause to the amount of the benefit being equal to the number of days of hospitalization by reason of "an accident which occurs while this Policy is in force" is an ambiguity which requires the policy to be construed as providing post-termination coverage. That language, however, is included in a limiting provision which is clearly for the purpose of excluding coverage for hospitalizations which may have resulted from accidents which occurred, or illnesses which may have begun, before the purchase of the policy. There is no more reason to say that this language provides coverage for convalescent benefits following hospitalization after termination of the policy if the hospitalization results from a pre-termination accident than to say that it provides such coverage for hospitalization resulting from sickness so long as the sickness began more than 28 days from issuance of the policy. The policy insures against the incurrence of expense, not against the cause of the expense, and benefits cease when the policy terminates. There is no extension of benefits. The same applies to the language in the Surgical Benefits policy stating that surgical expense covers accidental injuries involving surgery, except hernia, occurring after the policy date.

■ The plaintiff also argues that post-termination coverage is extended for expenses related to an accident which occurred while the policy was in force because of the policy's provision, relating to the insurer's option to renew, that, "Failure to renew shall be without prejudice to any claim originating prior thereto." This provision, however, has no application to the facts in this case. In the first place, we are not dealing with the insurer's refusal to renew the policy, but with the policy being terminated because the insured stopped paying his premiums. In the second place, we are not dealing with a "claim" which originated "while the Policy is in force". A "claim", by any reasonable interpretation, could only mean a basis for entitlement to benefits. Under both policies, there was no

basis for claiming benefits until there was a hospitalization. Regardless of whether the hospitalization resulted from injuries received in an accident which happened while the policy was in force, it is without dispute that the basis for claiming benefits, i.e., the hospitalization, did not occur until after the policy terminated and coverage ceased. The cases cited by the plaintiff involving disability benefits are not applicable here, since disability beginning prior to termination would be an existing claim.

The court is of the opinion that the policies at issue are not ambiguous and that they do not provide coverage for expenses incurred after the policies terminated for failure to pay premiums, even though the expenses were related to injuries received in an accident while the policies were in force.

### C. Other Claims

Since there was no coverage under the policies, the defendant did not act in bad faith in refusing to pay benefits.

As to the fraud claim, the only representations alleged to have been false and fraudulent are contained in the policies themselves. Since the policies taken as a whole were unambiguous, the court finds that they did not contain false representations.

### IV. CONCLUSION

For the reasons stated above, the court is of the opinion that the defendant's motion for summary judgment is well taken as to all counts and is due to be granted.